**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **RODNEY GRASTY,** | : | |
| **Plaintiff,** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO. 11-1778** |
| | : | |
| **WORLD FLAVORS, INC., ET AL.,** | : | |
| **Defendants.** | : | |

**MEMORANDUM AND ORDER**

**Tucker, J.**                                                                              **August ____, 2011**

Presently before this Court is Defendants' Motion to Dismiss (Doc. 8) and Plaintiff's

Response in Opposition thereto (Doc. 9).  For the reasons set forth below, the Court denies

Defendants' Motion.

**I.  BACKGROUND**

Plaintiff, an African-American resident of Pennsylvania, initiated this action against

Defendants, his former employer and several of his former managers, for workplace

discrimination and retaliatory discharge.  Defendant World Flavors, Inc. ("World Flavors") is a

Pennsylvania corporation that manufactures seasonings and ingredients for the food industry.  At

all relevant times, Defendant Ed Sellers was the corporation's plant manager, Defendant Chris

Knoll was the corporation's day supervisor, and Defendant Brian Hafner was the corporation's

general manager.

The facts construed in the light most favorable to Plaintiff are as follows.  On October 12,

2010, World Flavors hired Plaintiff as a cleaner to work the night shift.  Shortly after Plaintiff's

hire, the night shift supervisors Ron and Debbie, both of whom are Caucasian, began referring to

Plaintiff as "little black guy" and "little black boy."  Plaintiff alleges he complained to Defendants Sellers and Knoll about the racially offensive references, but Defendants took no action.

On October 21, 2010, Plaintiff was injured when a mixer fell on his hand at work.  After the accident, Plaintiff was reassigned to the morning shift.  Plaintiff avers that after his reassignment, the night supervisors and other co-workers continued to make racially offensive comments to him.  Plaintiff claims he once again complained to Defendant Sellers, but Sellers failed to address his complaints.  Plaintiff alleges the hostility directed towards him became so blatant that another employee stole his steel-toed boots and wore them in the workplace.  When Plaintiff reported the theft to Defendants, they refused to investigate and told Plaintiff to simply buy a new pair of boots.  According to Plaintiff, no one was ever disciplined for the theft.  Plaintiff alleges Defendants responded to his repeated complaints by reducing his work hours.

In December 2010, Plaintiff informed Defendants that, if they refused to address his complaints, he would file a claim with the Equal Employment Opportunity Commission.  Plaintiff alleges Defendant Sellers merely laughed at Plaintiff's threat and World Flavors' management responded by telling Plaintiff that "he should just quit."  On January 26, 2011, Defendants terminated Plaintiff's employment.  As justification for his termination, Defendants allege Plaintiff made "threatening statements" to his supervisors, an allegation Plaintiff denies.

Plaintiff further alleges that he filed a worker's compensation claim, but fails to include the exact date that he filed the worker's compensation claim in the Complaint.  He does, however, indicate that he worked light duty for a short period after he was injured, that Defendants terminated his employment on January 26, 2010, and that his employment was terminated soon

after he filed his worker's compensation claim.

On March 11, 2011, Plaintiff filed a Complaint (Doc. 1) in federal court alleging Defendants wrongfully retaliated against him and terminated his employment for complaining to management about the racially hostile work environment and for filing a worker's compensation claim.  Plaintiff's Complaint contains the following three counts: Count I for retaliation in violation of 42 U.S.C. § 1981 ("Section 1981"); Count II for discriminatory termination and hostile work environment in violation of 42 U.S.C. § 1981; and Count III for worker's compensation retaliation in violation of Pennsylvania's public policy exception to the at-will employment doctrine.  In his prayer for relief, Plaintiff seeks injunctive relief, back pay, punitive damages, and attorneys' fees and costs.  On May 3, 2011, Defendants filed a Motion to Dismiss (Doc. 8).  On May 13, 2011, Plaintiff filed a Response in Opposition thereto (Doc. 9) The Court now addresses this pending motion.

## II.  LEGAL STANDARD

"A pleading that states a claim for relief must contain ... a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a).  The statement required by Rule 8 must give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.  Erickson v. Pardus, 551 U.S. 89, 93 (2007).

On a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), the court is required to accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and to view them in the light most favorable to the non-moving party.  See Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 (3d Cir. 1994).  A complaint should be dismissed only if the alleged facts, taken as true, fail to state a

claim.  See In re Warfarin Sodium Antitrust Litig., 214 F.3d 395, 397–98 (3d Cir. 2000).  In making this determination, the question before the court is not whether the plaintiff will ultimately prevail, but whether the plaintiff can prove any set of facts consistent with his or her allegations that will entitle him or her to relief.  Scheuer v. Rhodes, 416 U.S. 232, 236 (1974) (explaining that the Court's role is limited to determining whether a plaintiff is entitled to offer evidence in support of her claims); Semerenko v. Cendant Corp., 223 F.3d 165, 173 (3d Cir. 2000).

While a court will accept well-pled allegations as true for the purposes of the motion, it will not accept bald assertions, unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations.  Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997).  Though detailed factual allegations are not required, the United States Supreme Court has recognized that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  In Twombly the Court made clear that it would not require a "heightened fact pleading of specifics," but only "enough facts to state a claim to relief that is plausible on its face." Id. at 570. A "pleader is required to 'set forth sufficient information to outline the elements of his claim or to permit inferences to be drawn that these elements exist.'" Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir.1993) (citation omitted).

In 2009 the United States Supreme Court revisited the requirements for surviving a 12(b)(6) motion to dismiss in Ashcroft v. Iqbal,129 S.Ct. 1937, 1950 (2009).  There the Court made clear that "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements [are] not suffice" to defeat a Rule 12(b)(6) motion to dismiss.  Id. at 1949.

-4-

In evaluating whether a Plaintiff has met the pleading requirements, a district court must identify "the 'nub' of the ... complaint—the well-pleaded, nonconclusory factual allegation [s]." Id. "[O]nly a complaint that states a plausible claim for relief [will] survive[ ] a motion to dismiss." Id. at 1950.

In light of the decisions in Twombly and Iqbal, the Third Circuit set forth a two-part analysis to be applied by district courts when presented with a 12(b)(6) motion. First, the court must separate the legal elements and factual allegations of the claim, with the well-pleaded facts accepted as true but the legal conclusions disregarded. Fowler v. UPMC Shadyside, 578 F.3d 203, 210–11 (3d Cir. 2009). Second, the court must determine whether the facts alleged in the complaint demonstrate that the plaintiff has a "plausible claim for relief." Id. at 211.

The defendant bears the burden of establishing that a plaintiff's complaint fails to state a claim. See Gould Elecs. v. United States, 220 F.3d 169, 178 (3d Cir. 2000).

## III. DISCUSSION

For the reasons that follow, the Court finds that Plaintiff's Complaint sufficiently makes out a prima facie case as it pertains to his claims for retaliation, discriminatory termination and hostile work environment. Additionally, though Plaintiff's complaint presently fails to state a claim for worker's compensation retaliation, the Court shall allow Plaintiff to amend his complaint with respect to this claim rather than grant Defendants' motion to dismiss.

### A. Plaintiff's Section 1981 Claim for Retaliation

Defendants argue that Plaintiff's retaliation claim must be dismissed because merely alleging that he is African-American and that his employment was terminated does not support his contention that race was a determinitive factor in Plaintiff's termination. Plaintiff disagrees and

asserts that his Complaint pleads all of the requisite elements with specificity to survive a motion to dismiss.  Specifically, Plaintiff contends he alleges (1) that he engaged in protected activity when he complained to plant management on at least three separate occasions about the racially derogatory comments made by his co-workers; (2) that he suffered an adverse action when following his complaints, his work hours were reduced and his employment was ultimately terminated; and (3) that a causal connection existed because of the temporal proximity between his complaints and the termination - Plaintiff threatened to file a complaint with the EEOC in December 2010 and he was terminated one month later in January 2011.

To establish a prima facie case of retaliation under Section 1981, a plaintiff must show that (1) he or she engaged in protected activity, (2) the employer took an adverse employment action after or contemporaneous with the protected activity, and (3) a causal link exists between the protected activity and the adverse action.  Weston v. Pennsylvania, 251 F.3d 420, 430 (3d Cir. 2001).  Protected activity may consist of "formal charges of discrimination as well as informal protests of discriminatory employment practices, including making complaints to management...." Barber v. CSX Distrib. Servs., 68 F.3d 694, 702 (3d Cir. 1995) (internal quotations omitted).  The term "adverse employment action" is understood to refer to a "significant change in employment status, such as hiring, firing, failing to promote, reassignment, or a decision causing significant change in benefits."  Weston v. Pennsylvania, 251 F.3d at 430-31.  To establish the existence of a causal connection, the court considers: (1) timing, and/or (2) evidence of ongoing antagonism. Abramson v. William Paterson College of New Jersey, 260 F.3d 265, 288 (3d Cir. 2001).  The first factor requires a close temporal proximity between the protected activity and the adverse employment action.  Id.  "[T]he timing of the alleged retaliatory action must be unusually

suggestive of retaliatory motive before a causal link will be inferred." <u>Thomas v. Town of Hammonton</u>, 351 F.3d 108, 114 (3d Cir. 2003) (citing <u>Estate of Smith v. Marasco</u>, 318 F.3d 497, 512 (3d Cir. 2003)).

The determination of whether the temporal proximity infers a causal connection is fact sensitive, and the ultimate determination depends on "how proximate the events actually were, and the context in which the issue [arose]." <u>Farrell v. Planters Lifesavers Co.</u>, 206 F.3d 271, 279 (3d Cir. 2000).  When the alleged retaliation occurs only a short time after the employer received notice of the employee's protected activity, courts are quick to draw an inference of causation. <u>See Jalil v. Avdel Corp.</u>, 873 F.2d 701, 708 (3d Cir. 1989) (holding that two days between notice of the protected activity and the retaliation led to an inference of causation).  That said, the Third Circuit has also determined that a time lapse as long as four months may still be suggestive of a causal connection.  <u>See e.g.</u>, <u>Kachmar v. SunGard Data Systems, Inc.</u>, 109 F.3d 173, 177 (3d Cir.1997) (finding that adverse employment action taken four months after employee engaged in protected activity is "circumstantial evidence sufficient to raise the inference that [plaintiff's] protected activity was the likely cause for the adverse action.").  <u>See also</u> <u>EEOC v. L.B. Foster Co.</u>, 123 F.3d 746, 754 (3d Cir.1997) (finding that employee's protected activity and the adverse employment action were "sufficiently close together to allow a reasonable factfinder to infer the required element of causation" for prima facie case, where the adverse action occurred two months after the employee engaged in protected activity).

Here, for the reasons espoused by Plaintiff, the Court finds that he has sufficiently established a prima facie case for retaliation.  It is without question that he alleges that he engaged in protected activity by complaining to management several times about the racially derogatory

comments made by coworkers; that he suffered an adverse action when his employment was ultimately terminated; and that a causal connection exists because of the relatively close temporal proximity, only one month, between the protected activity and the adverse action.  Moreover, that a causal connection can be inferred is bolstered by the allegations that Plaintiff's complaints were routinely ignored, that management laughed at his threat to filed a claim with the EEOC; and that management, rather than address Plaintiff's complaints, suggested that he quit his job. Accordingly, Defendants' motion to dismiss Plaintiff's retaliation claim is denied.

**B.  Plaintiff's Section 1981 Claims for Discriminatory Termination and Hostile Work Environment**

Plaintiff alleges that a determinitive factor in his termination was his race and that he was subjected to severe and/or pervasive hostility because of his race and/or because of his complaints of racial discrimination.  Because there are different legal standards for each of these claims, the Court will treat them separately.

### i.  Applicability of Section 1981 to At-will Employees

Defendants first argue that Plaintiff cannot bring either a discriminatory termination or hostile work environment claim against Defendants under Section 1981 because Plaintiff was an at-will employee and nowhere in the Complaint does Plaintiff state how Defendants deprived him of the ability to make or enforce contracts.  Plaintiff counters that although Section 1981 references "contracts" in the text of the law, it is well-established that the statute applies to at-will employees.

Here, the Court agrees with Plaintiff and rejects Defendants' argument that because Plaintiff was an at-will employee he is prohibited from bringing a cause of action under Section

1981.  Courts in this circuit have held that at-will employees are in a contractual relationship with their employers within the meaning of Section 1981 and that at-will employee discrimination claims are actionable under this statute.  See Rouse v. II-VI, Inc., 2007 WL 1007925, at * 10 (W.D. Pa. Mar. 30, 2007) ("each federal court of appeals that has explicitly decided the issue has held that an at-will employee may maintain a claim under § 1981 for racially discriminatory employment practices as has at least one district court in this circuit"); McClease v. R.R. Donnelley & Sons Co., 226 F. Supp. 2d 695, 702 (E.D. Pa. 2002).

### ii.  Plaintiff's Section 1981 Claim for Discriminatory Termination

Defendants contend that Plaintiff has not made out a prima facie case for discriminatory termination because Plaintiff only makes the conclusory allegation that he was terminated because of his race.  Defendants argue that Plaintiff provides no facts to support this claim except for his assertion that he is African-American and that he was terminated.  Plaintiff counters that he alleged all of the elements necessary to make out a prima facie case of discriminatory termination. Specifically, Plaintiff claims (1) the Complaint pleads that he is African-American and thus is a member of a protected class; (2) he argues that Defendants do not contest that he was qualified for the job; (3) the Complaint pleads that he suffered an adverse employment action by both having his work hours reduced and by being terminated; and (4) the Complaint pleads at least three specific actions that could give rise to an inference of discrimination - the racially offensive comments made by his supervisors, Defendant Sellers laughter in response to Plaintiff's threat to file a charge with the EEOC, and the alleged pretextual reason Defendant gave for terminating Plaintiff's employment.

Section 1981 discrimination claims are analyzed using the McDonnell Douglas burden

shifting scheme.  <u>Pamintuan v. Nanticoke Memorial Hosp.</u>, 192 F.3d 378, 385 (3d Cir. 1999).  To

establish a prima facie case for race discrimination under the <u>McDonnell Douglas</u> test, a plaintiff

must demonstrate that: (1) she belongs to a protected class; (2) she was qualified for the position;

(3) she was subject to an adverse employment action despite being qualified; and (4) the adverse

employment action occurred under circumstances that give rise to an inference of discrimination.

<u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802-03 (1973); <u>Jones v. School Dist. of Phila.</u>,

198 F.3d 403, 410 (3d Cir. 1999).

   Here, the Court finds that Plaintiff has made out a prima facie case of discriminatory

termination.  It is undisputed that Plaintiff is a member of a protected class, was qualified for his

position, and suffered an adverse employment action.  Thus, the only element at issue is whether

Plaintiff sufficiently pleaded that the adverse employment actions - the reduction in work hours

and ultimate termination - occurred under circumstances that give rise to an inference of

discrimination.

   When a plaintiff bases the inference of discrimination on allegations that she was

subjected to racially offensive comments in the workplace, to survive a motion to dismiss, the

plaintiff's complaint should describe with particularity the comments made, indicate who made

the comments and when, and show that the defendant knowingly allowed the comments to be

made.  <u>See</u> <u>Thomas v. Pocono Mountain School Dist.</u>, 2011 WL 2471532, at * 6 (M.D. Pa. Jun.

21, 2011).

   Here, it is indisputable that Plaintiff alleges facts from which a reasonable person could

infer discrimination.  Plaintiff avers that his supervisors referred to him as "little black boy" and

"little black guy" on multiple occasions.  Courts weighing similar facts under have determined

that a reasonable person could find such references to not only be racially offensive, but also indicative of discrimination.  See Ash v. Tyson Foods, Inc., 546 U.S. 454, 456 (2006) (rejecting notion that the term "boy" carries only a benign connotation and finding that evidence that a plant manager sometimes had referred to African-American employees as "boy" was potentially probative of discriminatory animus); Schultz v. Wilson, 2007 WL 4276696, at * 4 n.12 (M.D. Pa. Dec. 4, 2007) ("The term 'boy' may, in some contexts, be employed as a racial epithet demeaning to African Americans.").

The Court acknowledges that context matters and finds that Plaintiff pleads sufficient facts to shed light on the context in when the comments were made.  Indeed, one could reasonably infer that Caucasian supervisors repeatedly directing the references "boy" and "black boy" to an adult African-American male in the workplace goes far beyond mere insult and is evidence of racial hostility and animus.[1]  This conclusion is bolstered by Plaintiff's allegations that he complained to management about the comments on several occasions and even went so far as to inform Defendant Sellers manager that he planned to file a charge with the EEOC, but that no one in management ever addressed his complaints and Defendant Sellers laughed at Plaintiff's threat to file a charge with the EEOC.   From these facts, a reasonable person could conclude that management was aware of the offensive comments and, arguably, knowingly permitted such conduct to continue.  Based on the foregoing, the Court finds that Plaintiff made out a prima facie case of discriminatory termination and Defendants' motion to dismiss this claim must be denied.

---

[1]  To casually disregard this conclusion is to deny the long and complicated history of race and the reality of race relations in this country.

### *iii.  Plaintiff's Section 1981 Hostile Work Environment Claim*

Defendants argue that Plaintiff failed to make out a prima facie case with respect to the hostile work environment claim.  Defendants contend that the conduct about which Plaintiff complained was not necessarily discriminatory – the comment "little black guy" could simply be descriptive; Plaintiff's allegations of "hostile" treatment, "derogatory" treatment, and "animosity" lack specificity and do not sufficiently allege a hostile environment; that someone wore Plaintiff's work boots could have merely been an honest mistake given that all work boots are kept in the same locker room; Plaintiff's work hours could have been reduced because of economic reasons; and Plaintiff was terminated for making threatening statements against his supervisor and not because of his race or for making complaints about racial discrimination.  Defendants also contend that, to the extent any of Plaintiff's allegations are indicative of racial discrimination, Plaintiff's hostile work environment claim is still subject to dismissal because Plaintiff fails to establish that the alleged conduct was severe or pervasive.

Plaintiff counters that the Complaint sufficiently pleads facts showing the pervasive and severe nature of the discrimination as evidenced by the continuous racially offensive references made by his supervisors throughout the duration of his employment, the unaddressed theft of his work boots, and the multiple complaints to management that were ignored.

To establish a prima facie case for a hostile work environment in the Third Circuit, a Plaintiff must show (1) that she suffered intentional discrimination because of her membership in a protected class; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected the Plaintiff; (4) the discrimination would have affected a reasonable person in the same position; and (5) the existence of respondeat superior liability.  West v.

Philadelphia Elec. Co., 45 F.3d 744, 753 (3d Cir. 1995). The requirements are the same for

hostile work environment claims brought under both § 1981 and Title VII. See id. at 744.

It is apparent on the face of Plaintiff's Complaint that he has alleged sufficient facts from

which a reasonable juror could determine that he was a member of a protected class, that the

discrimination detrimentally affected him and would have similarly affected a reasonable person

in the same position, and that respondeat superior liability existed. Thus, the sole factor for

consideration is whether the conduct Plaintiff described was severe or pervasive enough to make

out hostile work environment claim.

In weighing whether discrimination is severe or pervasive, "occasional insults, teasing, or

episodic instances of ridicule are not enough." Jensen v. Potter, 435 F.3d 444, 451 (3d Cir. 2006),

overruled in part on other grounds by Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53

(2006). Rather, the Supreme Court has stated, "whether an environment is 'hostile' or 'abusive'

can be determined only by looking at all the circumstances. These may include the frequency of

the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a

mere offensive utterance; and whether it unreasonably interferes with an employee's work

performance." Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993). "No one factor is dispositive,

and the analysis must focus on the 'totality of the circumstances.' " Vrom v. A. Crivelli Buick

Pontiac GMC, Inc., No. 08-182, 2010 WL 1052951, at *6 (W.D. Pa. Mar.22, 2010) (quoting

Andrews v. City of Phila., 895 F.2d 1469, 1482 (3d Cir. 1990)).

The Court finds Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1082 (3d Cir. 1996).

instructive on the issue of what constitutes severe and pervasive discrimination. In Aman, two

black employees appealed the district court's grant of their former employer's motion for summary

-13-

judgment on the basis that they had failed to demonstrate the existence of a racially hostile work environment.  Id. at 1077.   The plaintiffs did not allege that they had been called names that were overtly racial, but instead they were referred to by what the Court of Appeals called "inherently racist remarks" such as "another one," "one of them," "that one in there," and "all of you."  Id. at 1082.  The court noted that, in addition to those remarks, the two employees testified to numerous other examples of harassment which, when considered in aggregate, appeared to be motivated by racial animus.  Id. at 1083.  For example, one of the employees alleges that her time cards were stolen at work, which made it harder for her to perform her job.  Id.  The Court determined that "[i]n light of the suspicious remarks discussed above, a reasonable jury could interpret this behavior as part of a complex tapestry of discrimination when examined in conjunction with the comments made by . . . management."  Id.  Ultimately the Court of Appeals determined that summary judgment should not have been granted in the defendant's favor because the plaintiffs "provided sufficient evidence such that a reasonable jury could conclude that they were subject to intentional discrimination on a regular and pervasive basis."  Id. at 1084.

The court reached a similar conclusion in Morris v. Great Lakes Behavioral Inst./Diversified Care Mgmt., 2007 WL 4198273, at * 20 (W.D. Pa. Nov. 27, 2007), where the court determined that the plaintiff, who pleaded that African American employees were being subjected to "denigrating or dismissive language," submitted sufficient evidence of a work environment infused with . . . racial messages to meet the "severe and pervasive" prong of a hostile work environment claim.  See also Bernard v. Calhoon Meba Engineering School, 309 F. Supp. 2d 732, 738 (D. Md. 2004) (explaining that a co-worker's "repeated use of the term 'black boy,' both in describing [the plaintiff] and in making 'jokes,' is no less offensive and is indicative

of the same kind of racial animus that is not tolerated in a harassment-free workplace."); <u>Ross v.</u>

<u>Douglas County, Nebraska</u>, 234 F.3d 391, 396 (8th Cir. 2000) (recognizing that an African

American supervisor's repeated use of the term "black boy" in reference to an African American

subordinate is racially offensive and probative of hostile environment based on race).

    Here, the Court finds that Plaintiff has put forth sufficient evidence such that a reasonable

trier of fact could find that the complained of conduct was discriminatory and severe and

pervasive enough to constitute a hostile work environment.  As previously discussed, a reasonable

person could find that Plaintiff's supervisors' repeated references to him as "little black boy" and

"little black guy" to be racially offensive and indicative of discrimination.  Plaintiff alleged that he

was subjected to the racial references throughout the duration of his employment.  Thus, the

frequency with which the comments were made is suggestive of an abusive environment.

Moreover, the ongoing nature of the comments combined with the fact that Plaintiff

complained about them to management on at least three separate occasions and management did

nothing strengthens the inference that a hostile work environment existed.  In fact, courts have

reasoned that an employer's "failure to investigate plaintiff's complaints of harassment is the type

of subtle discrimination" which contributes to the finding of a hostile work environment.  <u>See</u>

<u>Davis v. Nat'l R.R. Passenger Corp.</u>, 733 F. Supp. 2d 474, 487 (D. Del. 2010) ("The employer's

responsibility is to provide its employees with nondiscriminatory working conditions. The genesis

of inequality matters not; what does matter is how the employer handles the problem.") (quoting

<u>Dunn v. Wash. County Hosp.</u>, 429 F.3d 689, 692 (7th Cir. 2005)).   Additionally, like the plaintiff

in <u>Aman</u> who alleged that her time cards were stolen at work, Plaintiff alleges that a co-worker

stole his work boots and wore them in the workplace, an act that contributed to the harassing

environment.  Further, the fact that two of the  individuals who engaged in the alleged conduct,

Ron and Debbie, were Plaintiff's supervisors also supports a reasonable inference that the

environment to which Plaintiff was subjected was abusive.  See Aman, 85 F.3d at 1084

(plaintiffs' hostile work environment claim was made more compelling because " . . . a reasonable

jury could conclude that . . . management was not only aware of these acts and statements, but was

also a source of the harassment and comments").  In sum, considering the totality of the alleged

conduct, the Court finds that Plaintiff's Complaint sufficiently pleads the "severe or pervasive"

prong of a hostile work environment claim.  As such, Defendants' motion to dismiss this claim

must be denied.[2]

### C.  Plaintiff's Worker's Compensation Retaliation Claim

Defendants argue that Plaintiff's claim for Worker's Compensation retaliation must be

dismissed because Plaintiff fails to explain what his worker's compensation claim was, whether it

was accepted, when it was made or how the claim related to his termination.  Defendants further

contend that Plaintiff's mere allegation that he was terminated in close proximity to the filing of

his worker's compensation claim is insufficient to support his retaliation claim.  Plaintiff

disagrees and asserts that alleges all of the necessary elements of a worker's compensation

---

[2]  Note that this decision is consistent with others in this jurisdiction which have shown a
reluctance to dismiss a complaint at the 12(b)(6) stage when the primary challenge to the hostile work
environment claim is whether or not the conduct in question is severe and/or pervasive.

> The resistance of district courts to dismiss claims at the 12(b)(6) stage makes good sense
> in light of the fact that the determination of what constitutes "severe or pervasive" does
> not lend itself to a 'mathematically precise test, but instead requires that a court look to
> the totality of circumstances. This inquiry is necessarily fact-intensive; thus, summary
> judgment provides a more appropriate vehicle to resolve these issues, as the parties at
> that stage have had an opportunity to conduct discovery and develop their claims.

Long v. Pizza Hut (Store# 635008), 2003 WL 23019186, at * 4 (W.D. Pa. Nov. 5, 2003) (citing Harris v.
Forklift Sys., Inc., 510 U.S. 17, 23-24 (1993).

retaliation claim.  Specifically, Plaintiff contends the Complaint pleads (1) that he engaged in protected activity by sustaining a work-related injury and filing a worker's compensation claim; (2) that he suffered an adverse action when his employment was terminated; and (3) that there was a causal connection because of the close temporal proximity between the filing of his worker's compensation claim and his subsequent termination.

The Pennsylvania Supreme Court first recognized the common law claim of retaliation for exercising one's rights under the Pennsylvania Workers' Compensation Act in 1998.  <u>Shick v. Shirey Lumber</u>, 716 A.2d 1231 (Pa. 1998).  Though the Pennsylvania Supreme Court has yet to pronounce the elements of a prima facie case of retaliation for pursuit of workers' compensation benefits, a number of federal courts in this circuit have predicted that the Pennsylvania Supreme Court would apply the Title VII framework to such retaliation claims.  <u>See</u> <u>Deily v. Waste Management of Allentown</u>, 55 Fed. App'x 605, 608 (3d Cir. 2003).

To establish a prima facie case of retaliation under Title VII, a plaintiff must adduce evidence that: " '(1) she engaged in activity protected by Title VII; (2) the employer took an adverse employment action against her; and (3) there was a causal connection between her participation in the protected activity and the adverse employment action." '  <u>Moore v. City of Philadelphia</u>, 461 F.3d 331, 340-41 (3d Cir. 2006).  With respect to the causal connection element, temporal proximity between the protected conduct and the adverse action may support an inference of retaliation.  <u>See</u> <u>Woodson v. Scott Paper Co.</u>, 109 F.3d 913, 920 (3d Cir. 1997). When the chief evidence relied upon by the plaintiff to establish the causal connection is the temporal proximity, courts have, at a minimum, required the plaintiff to plead specific dates of the protected activity and the adverse action.  <u>See e.g.</u>, <u>Deily</u>, 55 Fed. App'x at 609; <u>Diante v.</u>

Henderson, 2000 WL 250225, at *9 (E.D. Pa. Mar. 02, 2000) (noting that the plaintiff produced a time line of provable events revealing a pattern of adverse action in close proximity to protected conduct).

Here, it is clear that the first two elements of a prima facie case have been met: Plaintiff engaged in protected activity as defined under Shick, and the employer took the adverse action of terminating him after he had engaged in that protected activity.  As to the causal connection element, however, the Court finds that Plaintiff has not plead sufficient facts to demonstrate the temporal proximity between the protected activity and the termination because the Court does not know when Plaintiff filed his worker's compensation claim.  Accordingly, the Court finds that Plaintiff has failed to state a claim for worker's compensation retaliation.  Given the liberal light in which Plaintiff's claims should be considered at this stage, however, Defendants' motion to dismiss is denied and Plaintiff is granted leave to amend his Complaint within fourteen (14) days of this Court's order.[3]

## IV.  CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss Plaintiff's Complaint is denied and Plaintiff is granted leave to amend his Complaint with respect to the worker's compensation retaliation claim within fourteen (14) days of this Court's order.  An appropriate Order follows.

---

[3]  The Third Circuit has repeatedly stated a "strong preference that [claimants] be given leave to amend where amendment is likely to cure the defects resulting in dismissal."  Blasband v. Rales, 971 F.2d 1034, 1054 (3rd Cir.1992); see also Kauffman v. Moss, 420 F.2d 1270, 1276 (3rd Cir.1970).

-18-